UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT OWENSBORO


(FILED ELECTRONICALLY)


CIVIL ACTION NO. ___4:19-CV-82-JHM_____

UNITED STATES OF AMERICA                                              PLAINTIFF

vs.

CLINTON D. GIPSON, SR.                                              DEFENDANTS
410 Bass Hill Road
Nortonville, Kentucky 42442-9591

SHARON C. GIPSON
325 Race Street
Madisonville, Kentucky  42431-2449

BENEFICIAL KENTUCKY, INC.
SERVE:  Lloyd & McDaniel, PLC
Attorney for Judgment Creditor
POB 23200
Louisville, Kentucky 40223-0220

ALLIANCE RESOURCE PROPERTIES LLC
SERVE: Cogency Global Inc., Registered Agent
828 Lane Allen Road
Suite 219
Lexington, KY 40504


**COMPLAINT FOR FORECLOSURE**


Plaintiff, the United States of America, states as follows:

1.      This is a mortgage foreclosure action brought by the United States of America on

behalf of its agency, the United States Department of Agriculture Rural Housing Service also

known as Rural Development (hereinafter collectively "RHS").

2.      Jurisdiction arises under 28 U.S.C. § 1345.  Venue is proper in this judicial division, where the subject property is located.

3.      RHS is the holder of a promissory note ("the Note") executed for value on September 27, 2004 by Defendants **Clinton D. Gipson, Sr. (also known as Clinton Dale Gipson)** and **Sharon C. Gipson** ("the Borrowers").  The principal amount of the Note was $113,500.00, bearing interest at the rate of 6.375 percent per annum, and payable in monthly installments as specified in the Note.  A copy of the Note is attached as **Exhibit A** and incorporated by reference as if set forth fully herein.

4.      The Note is secured by a Real Estate Mortgage (the "Mortgage") recorded on September 27, 2004, in Mortgage Book 785, Page 161, in the Office of the Clerk of Hopkins County, Kentucky.  Through the Mortgage, the Borrowers granted RHS a first mortgage lien against the real property including all improvements, fixtures and appurtenances thereto at 2119 Antioch Church Road, Madisonville, Hopkins County, Kentucky (the "Property") and described in more detail in the Mortgage.  A copy of the Mortgage is attached as **Exhibit B** and incorporated by reference as if set forth fully herein.

5.      To receive subsidies on the loan, the Borrowers signed a Subsidy Repayment Agreement authorizing RHS to recapture, upon transfer of title or non-occupancy of the Property, any subsidies granted to the Borrowers by RHS.  A copy of the Subsidy Repayment Agreement is attached as **Exhibit C** and incorporated by reference as if set forth fully herein.

6.      The Borrowers have defaulted on the Note and Mortgage by failing to make payments when due.

7.      RHS has, in accordance with the loan documents, accelerated the loan and declared the entire principal balance, together with all accrued and unpaid interest and all other

sums due under the loan documents, to be due and payable.  Further, RHS sent notice to the Borrowers of the default and acceleration of the loan.

8.      In accordance with the loan documents, the United States is entitled to enforce the Mortgage through this foreclosure action and to have the Property sold to pay all amounts due, together with the costs and expenses of this action.

9.      The unpaid principal balance on the Note is $89,279.92 with accrued interest of $6,861.13 through June 11, 2019 with a total subsidy granted of $26,761.92, late charges in the amount of $82.68, and fees assessed of $2,969.03, for a total unpaid balance of $125,954.68 as of June 11, 2019.  Interest is accruing on the unpaid principal balance at the rate of $16.1043 per day after June 11, 2019.

10.      The Property is indivisible and cannot be divided without materially impairing its value and the value of RHS's lien thereon.

11.      Defendant **Beneficial Kentucky, Inc.** may claim an interest in the Property by virtue of a Notice of Judgment Lien recorded on May 20, 2009 in Encumbrance Book 81, Page 697 in the Hopkins County Clerk's Office, a copy of which is attached as **Exhibit D**.  The interest of this Defendant is inferior in rank and subordinate in priority to the first mortgage lien on the Property in favor of RHS, and the Plaintiff calls upon this Defendant to come forth and assert its interest in or claim upon the Property, if any, and offer proof thereof, or be forever barred.

12.      Defendant **Alliance Resource Properies LLC** may claim an interest in the Property by virtue of a Memorandum of Coal Lease Agreement entered into with Clinton D. Gipson and Sharon K. Gipson on or about July 19, 2017, a copy of which is attached as **Exhibit E**.  The interest of this Defendant is inferior in rank and subordinate in priority to the first mortgage lien on the Property in favor of RHS, and the Plaintiff calls upon this Defendant to

3

come forth and assert its interest in or claim upon the Property, if any, and offer proof thereof, or be forever barred.  Plaintiff seeks an order extinguishing this lease so that the Property may be sold free and clear of any claims by this Defendant.

13.     There are no other persons or entities purporting to have an interest in the Property known to the Plaintiff.

WHEREFORE, Plaintiff, the United States of America, on behalf of RHS, demands:

a.     Judgment against the interests of the Borrowers in the Property in the principal amount of $89,279.92, plus $6,861.13 interest as of June 11, 2019, and $26,761.92 for reimbursement of interest credits, late charges in the amount of $82.68, and fees assessed of $2,969.03, for a total unpaid balance due of $125,954.68 as of June 11, 2019, with interest accruing at the daily rate of $16.1043 from June 11, 2019, until the date of entry of judgment, and interest thereafter according to law, plus any additional costs, disbursements and expenses advanced by the United States;

b.     That the United States be adjudged a lien on the Property, prior and superior to any and all other liens, claims, interests and demands, except liens for unpaid real estate ad valorem taxes;

c.     That the United States' lien be enforced and the Property be sold in accordance with Title 28 U.S.C. §§ 2001-2003 subject to easements, restrictions and stipulations of record, but free and clear of all other liens and encumbrances except liens for any unpaid ad valorem real property taxes;

d.     That the proceeds from the sale be applied first to the costs of this action, second to any ad valorem real property taxes, if any, third to the satisfaction of the debt, interest, costs and fees due the United States, with the balance remaining to be distributed to the parties as their liens or interests may appear;

e.       An order extinguishing the Memorandum of Coal Lease Agreement with **Alliance**

**Resource Properties LLC;**

f.       That the Property be adjudged indivisible and be sold as a whole; and

g.       That the United States receive any and all other lawful relief to which it may be

entitled.

UNITED STATES OF AMERICA

RUSSELL M. COLEMAN
United States Attorney


s/ William F. Campbell
William F. Campbell
Katherine A. Bell
Assistant United States Attorneys
717 West Broadway
Louisville, Kentucky  40202
Phone:  502/582-5911
Fax:    502/625-7110
bill.campbell@usdoj.gov
Katherine.bell@usdoj.gov

§JS 44   (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
UNITED STATES OF AMERICA

**DEFENDANTS**
CLINTON D. GIPSON, SR., ET AL.

**(b)** County of Residence of First Listed Plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    HOPKINS
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Attorneys (If Known)

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

☑ 1  U.S. Government
   Plaintiff

☐ 3  Federal Question
   (U.S. Government Not a Party)

☐ 2  U.S. Government
   Defendant

☐ 4  Diversity
   (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                               and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☑ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN   (Place an "X" in One Box Only)

☑ 1 Original
   Proceeding

☐ 2 Removed from
   State Court

☐ 3 Remanded from
   Appellate Court

☐ 4 Reinstated or
   Reopened

☐ 5 Transferred from
   another district
   (specify)

☐ 6 Multidistrict
   Litigation

☐ 7 Appeal to District
   Judge from
   Magistrate
   Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. SECTION 1345
Brief description of cause:
RURAL HOUSING SERVICE (RHS) f/k/a FARMERS HOME ADMINISTRATION (FmHA) FEDERAL FORECLOSURE

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION
   UNDER F.R.C.P. 23

DEMAND $
$125,954.68

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes  ☑ No

## VIII. RELATED CASE(S) IF ANY
(See instructions:)     JUDGE                                DOCKET NUMBER

DATE
7/15/2019

SIGNATURE OF ATTORNEY OF RECORD
s/ William F. Campbell

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

USDA-RHS
Form FmHA 1940-16
(Rev. 10-96)

# PROMISSORY NOTE

Type of Loan SECTION 502

Loan No. ~~████~~

Date: __September 27__ , __2004__

__2119 Antioch Church Rd__
(Property Address)

__Hanson__ , __Hopkins__ , __Kentucky__
(City or Town)    (County)    (State)

BORROWER'S PROMISE TO PAY. In return for a loan that I have received, I promise to pay to the order of the United States of America, acting through the Rural Housing Service (and its successors)("Government") $ __113,500.00__ (this amount is called "principal"), plus interest.

INTEREST. Interest will be charged on the unpaid principal until the full amount of the principal has been paid. I will pay interest at a yearly rate of __6.375__ %. The interest rate required by this section is the rate I will pay both before and after any default described below.

PAYMENTS. I agree to pay principal and interest using one of two alternatives indicated below:

[x] I. Principal and interest payments shall be temporarily deferred. The interest accrued to __December 29__ , __2004__ shall be added to the principal. The new principal and later accrued interest shall be payable in __392__ regular amortized installments on the date indicated in the box below. I authorize the Government to enter the amount of such new principal here: $ __113,551.23__ , and the amount of such regular installments in the box below when such amounts have been determined. I agree to pay principal and interest in installments as indicated in the box below.

[ ] II. Payments shall not be deferred. I agree to pay principal and interest in _____ installments as indicated in the box below.

> I will pay principal and interest by making a payment every month.
> I will make my monthly payment on the ~~28th~~ day of each month beginning on __January 28~~February 28x~~ 2005__ and continuing for __391__ months. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this note. My monthly payments will be applied to interest before principal. If on __September 27__ __2037__ , I still owe amounts under this note, I will pay those amounts in full on that date, which is called the "maturity date."
> My monthly payment will be $ __689.67__ . I will make my monthly payment at __the post office address noted on my billing statement__ or a different place if required by the Government.

PRINCIPAL ADVANCES. If the entire principal amount of the loan is not advanced at the time of loan closing, the unadvanced balance of the loan will be advanced at my request provided the Government agrees to the advance. The Government must make the advance provided the advance is requested for an authorized purpose. Interest shall accrue on the amount of each advance beginning on the date of the advance as shown in the Record of Advances below. I authorize the Government to enter the amount and date of such advance on the Record of Advances.

HOUSING ACT OF 1949. This promissory note is made pursuant to title V of the Housing Act of 1949. It is for the type of loan indicated in the "Type of Loan" block at the top of this note. This note shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions of this note.

1

*Exhibit A*

...GES. If the Government has not received the full amount of any monthly payment by the end of 15 ... the date it is due, I will pay a late charge. The amount of the charge will be 4.000 percent of my payment of principal and interest. I will pay this charge promptly, but only once on each late payment.

...OWER'S RIGHT TO PREPAY. I have the right to make payments of principal at any time before they are due. A ...ment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Government in ...iting that I am making a prepayment.

I may make a full prepayment or partial prepayment without paying any prepayment charge. The Government will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Government agrees in writing to those changes. Prepayments will be applied to my loan in accordance with the Government's regulations and accounting procedures in effect on the date of receipt of the payment.

**ASSIGNMENT OF NOTE.** I understand and agree that the Government may at any time assign this note without my consent. If the Government assigns the note I will make my payments to the assignee of the note and in such case the term "Government" will mean the assignee.

**CREDIT ELSEWHERE CERTIFICATION.** I certify to the Government that I am unable to obtain sufficient credit from other sources at reasonable rates and terms for the purposes for which the Government is giving me this loan.

**USE CERTIFICATION.** I certify to the Government that the funds I am borrowing from the Government will only be used for purposes authorized by the Government.

**LEASE OR SALE OF PROPERTY.** If the property constructed, improved, purchased, or refinanced with this loan is (1) leased or rented with an option to purchase, (2) leased or rented without option to purchase for 3 years or longer, or (3) is sold or title is otherwise conveyed, voluntarily or involuntarily, the Government may at its option declare the entire remaining unpaid balance of the loan immediately due and payable. If this happens, I will have to immediately pay off the entire loan.

**REQUIREMENT TO REFINANCE WITH PRIVATE CREDIT.** I agree to periodically provide the Government with information the Government requests about my financial situation. If the Government determines that I can get a loan from a responsible cooperative or private credit source, such as a bank or a credit union, at reasonable rates and terms for similar purposes as this loan, at the Government's request, I will apply for and accept a loan in a sufficient amount to pay this note in full. This requirement does not apply to any cosigner who signed this note pursuant to section 502 of the Housing Act of 1949 to compensate for my lack of repayment ability.

**SUBSIDY REPAYMENT AGREEMENT.** I agree to the repayment (recapture) of subsidy granted in the form of payment assistance under the Government's regulations.

**CREDIT SALE TO NONPROGRAM BORROWER.** The provisions of the paragraphs entitled "Credit Elsewhere Certification" and "Requirement to Refinance with Private Credit" do not apply if this loan is classified as a nonprogram loan pursuant to section 502 of the Housing Act of 1949.

**DEFAULT.** If I do not pay the full amount of each monthly payment on the date it is due, I will be in default. If I am in default the Government may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Government may require me to immediately pay the full amount of the unpaid principal, all the interest that I owe, and any late charges. Interest will continue to accrue on past due principal and interest. Even if, at a time when I am in default, the Government does not require me to pay immediately as describe in the preceding sentence, the Government will still have the right to do so if I am in default at a later date. If the Government has required me to immediately pay in full as described above, the Government will have the right to be paid back by me for all of its costs and expenses in enforcing this promissory note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

2

Account # ▓▓▓▓▓▓

Unless applicable law requires a different method, any notice that must be given to me under this note will by delivering it or by mailing it by first class mail to me at the property address listed above or at a different if I give the Government a notice of my different address. Any notice that must be given to the Government given by mailing it by first class mail to the Government at USDA / Rural Housing Service, c/o Customer ice Branch, P.O. Box 66889, St. Louis, MO 63166 , or at a different address if I am given a notice of different address.

OBLIGATIONS OF PERSONS UNDER THIS NOTE. If more than one person signs this note, each person is fully and personally obligated to keep all of the promises made in this note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this note is also obligated to do these things. The Government may enforce its rights under this note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this note. The term "Borrower" shall refer to each person signing this note.

WAIVERS. I and any other person who has obligations under this note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Government to demand payment of amounts due. "Notice of dishonor" means the right to require the Government to give notice to other persons that amounts due have not been paid.

WARNING: Failure to fully disclose accurate and truthful financial information in connection with my loan application may result in the termination of program assistance currently being received, and the denial of future federal assistance under the Department of Agriculture's Debarment regulations, 7 C.F.R. part 3017.

| _Clinton D Gipson SR_ | Seal | _Sharon C Gipson_ | Seal |
|---|---|---|---|
| Borrower | | Borrower | |

| | Seal | | Seal |
|---|---|---|---|
| Borrower | | Borrower | |

| RECORD OF ADVANCES | | | | | |
|---|---|---|---|---|---|
| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
| (1) $ 500.00 | 9-27-04 | (8) $ | | (15) $ | |
| (2) $ 43,354.00 | 11-23-04 | (9) $ | | (16) $ | |
| (3) $ 100.00 | 12-27-04 | (10) $ | | (17) $ | |
| (4) $ 69,546.00 | 12-27-04 | (11) $ | | (18) $ | |
| (5) $ | | (12) $ | | (19) $ | |
| (6) $ | | (13) $ | | (20) $ | |
| (7) $ | | (14) $ | | (21) $ | |
| | | | | TOTAL $ 113,500 | |

Account #: 0███████

3

BOOK 785 PAGE 161

Form RD 3550-14 KY
(8-99)

Space Above This Line For Recording Data

Form Approved
OMB No. 0575-0172

United States Department of Agriculture
Rural Housing Service

# MORTGAGE FOR KENTUCKY

THIS MORTGAGE ("Security Instrument") is made on **September 27** , **2004** . [Date]
The mortgagor is **Clinton D. Gipson, Sr. and Sharon Gipson, married** ("Borrower").

This Security Instrument is given to the United States of America acting through the Rural Housing Service or successor agency, United States Department of Agriculture ("Lender"), whose address is Rural Housing Service, c/o Centralized Servicing Center, United States Department of Agriculture, P.O. Box 66889, St. Louis, Missouri 63166.

Borrower is indebted to Lender under the following promissory notes and/or assumption agreements (herein collectively called "Note") which have been executed or assumed by Borrower and which provide for monthly payments, with the full debt, if not paid earlier, due and payable on the maturity date:

| Date of Instrument | Principal Amount | Maturity Date |
|---|---|---|
| September 27, 2004 | $113,500.00 | September 27, 2037 |

This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the property covered by this Security Instrument; (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note, and (d) the recapture of any payment assistance and subsidy which may be granted to the Borrower by the Lender pursuant to 42 U.S.C. §§ 1472(g) or 1490a. For this purpose, Borrower does hereby mortgage, grant, and convey to Lender the following described property located in the County of **Hopkins**
, State of Kentucky

**See attached Exhibit A**

which has the address of **2119 Antioch Church Road** **Madisonville**
                                              [Street]                         [City]

Kentucky **42431** [ZIP]             ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures which now or hereafter are a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record.

*According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0575-0172. The time required to complete this information collection is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information*

Page 1 of 6

Exhibit B

162

Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; and (d) yearly flood insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 *et seq.* ("RESPA"), unless another law or federal regulation that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held by a federal agency (including Lender) or in an institution whose deposits are insured by a federal agency, instrumentality, or entity. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If Lender shall acquire or sell the Property after acquisition under paragraph 22, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. **Application of Payments.** Unless applicable law or Lender's regulations provide otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied in the following order of priority: (1) to advances for the preservation or protection of the Property or enforcement of this lien; (2) to accrued interest due under the Note; (3) to principal due under the Note; (4) to amounts required for the escrow items under paragraph 2; (5) to late charges and other fees and charges.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Lender has agreed in writing to such lien or Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within ten (10) days of the giving of notice.

163

Borrower shall pay to Lender such fees and other charges as may now or hereafter be required by regulations of Lender, and pay or reimburse Lender for all of Lender's fees, costs, and expenses in connection with any full or partial release or subordination of this instrument or any other transaction affecting the property.

5.  **Hazard or Property Insurance.**  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance.  This insurance shall be maintained in the amounts and for the periods that Lender requires.  The insurer providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld.  If Borrower fails to maintain coverage described above, at Lender's option Lender may obtain coverage to protect Lender's rights in the Property pursuant to paragraph 7.

All insurance policies and renewals shall be in a form acceptable to Lender and shall include a standard mortgagee clause.  Lender shall have the right to hold the policies and renewals.  If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices.  In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender.  Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened.  If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower.  If Borrower abandons the Property, or does not answer within thirty (30) days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds.  Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due.  The thirty (30) day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments.  If after acceleration the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6.  **Preservation, Maintenance, and Protection of the Property; Borrower's Loan Application; Leaseholds.**  Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property.  Borrower shall maintain the improvements in good repair and make repairs required by Lender.  Borrower shall comply with all laws, ordinances, and regulations affecting the Property.  Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest.  Borrower may cure such a default by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest.  Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note.  If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease.  If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

7.  **Protection of Lender's Rights in the Property.**  If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property.  Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs.  Although Lender may take action under this paragraph 7, Lender is not required to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument.  Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8.  **Refinancing.**  If at any time it shall appear to Lender that Borrower may be able to obtain a loan from a responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes, Borrower will, upon the Lender's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby in full.

9.  **Inspection.**  Lender or its agent may make reasonable entries upon and inspections of the Property.  Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10.  **Condemnation.**  The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.  In the event of a total taking of the Property, the proceeds shall be

164

applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction:  (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking.  Any balance shall be paid to Borrower.  In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured hereby immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within thirty (30) days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.  Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11.  Borrower Not Released; Forbearance By Lender Not a Waiver.**  Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower and any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest.  Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest.  Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12.  Successors and Assigns Bound; Joint and Several Liability; Co-signers.**  The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16.  Borrower's covenants and agreements shall be joint and several.  Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13.  Notices.**  Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method.  The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender.  Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower.  Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14.  Governing Law; Severability.**  This Security Instrument shall be governed by federal law.  In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.  To this end the provisions of this Security Instrument and the Note are declared to be severable.  This instrument shall be subject to the present regulations of Lender, and to its future regulations not inconsistent with the express provisions hereof.  All powers and agencies granted in this instrument are coupled with an interest and are irrevocable by death or otherwise; and the rights and remedies provided in this instrument are cumulative to remedies provided by law.

**15.  Borrower's Copy.**  Borrower acknowledges receipt of one conformed copy of the Note and of this Security Instrument.

**16.  Transfer of the Property or a Beneficial Interest in Borrower.**  If all or any part of the Property or any interest in it is leased for a term greater than three (3) years, leased with an option to purchase, sold, or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument.

**17.  Nondiscrimination.**  If Borrower intends to sell or rent the Property or any part of it and has obtained Lender's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower, will refuse to negotiate for the sale or rental of the Property or will otherwise make unavailable or deny the Property to anyone because of race, color, religion, sex, national origin, handicap, age, or familial status, and (b) Borrower recognizes as illegal and hereby disclaims and will not comply with or attempt to enforce any restrictive covenants on dwelling relating to race, color, religion, sex, national origin, handicap, age or familial status.

**18.  Sale of Note; Change of Loan Servicer.**  The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower.  A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security

165

Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 13 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made.

19. **Uniform Federal Non-Judicial Foreclosure.** If a uniform federal non-judicial foreclosure law applicable to foreclosure of this security instrument is enacted, Lender shall have the option to foreclose this instrument in accordance with such federal procedure.

20. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any hazardous substances on or in the Property. The preceding sentence shall not apply to the presence, use, or storage on the Property of small quantities of hazardous substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any federal, state, or local environmental law or regulation.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any hazardous substance or environmental law or regulation of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any hazardous substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with applicable environmental law and regulations.

As used in this paragraph "hazardous substances" are those substances defined as toxic or hazardous substances by environmental law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "environmental law" means federal laws and regulations and laws and regulations of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

21. **Cross Collateralization.** Default hereunder shall constitute default under any other real estate security instrument held by Lender and executed or assumed by Borrower, and default under any other such security instrument shall constitute default hereunder.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

22. **SHOULD DEFAULT** occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should any one of the parties named as Borrower die or be declared an incompetent, or should any one of the parties named as Borrower be discharged in bankruptcy or declared an insolvent, or make an assignment for the benefit of creditors, Lender, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to Lender hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the Property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the Property, with the usual powers of receivers in like cases, (d) foreclose this instrument as provided herein or by law, and (e) enforce any and all other rights and remedies provided herein or by present or future law.

23. The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to Lender secured hereby, (d) inferior liens of record required by law or a competent court to be so paid, (e) at Lender's option, any other indebtedness of Borrower owing to Lender, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the Property, Lender and its agents may bid and purchase as a stranger and may pay Lender's share of the purchase price by crediting such amount on any debts of Borrower owing to Lender, in the order prescribed above.

24. Borrower agrees that Lender will not be bound by any present or future state laws, (a) providing for valuation, appraisal, homestead or exemption of the Property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action may be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which Lender may by regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the Property to a new Borrower. Borrower expressly waives the benefit of any such state law. Borrower hereby relinquishes, waives, and conveys all rights, inchoate or consummate, of descent, dower, and curtesy.

25. **Release.** Upon termination of this mortgage, after payment in full, the mortgagee, at Borrower's expense, shall execute and file or record such instruments of release, satisfaction and termination in proper form pursuant to the requirements contained in KRS 382.365

26. Riders to this Security Instrument. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each rider shall be incorporated into and

167

## CLINTON D. GIPSON, SR., ET UX.

## MORTGAGE EXHIBIT A

A certain tract of land situated on the South side of a County road and the East side of a gravel drive and located approximately 4 miles West of Hanson, Hopkins County, Kentucky, and more particularly described as follows:

Beginning at a point in the center of a County Road; thence with the center of said road as follows:   South 59°41' East 65.93 feet, South 51° 59' East 70.29 feet; South 47° 04' East 156.79 feet; South 56° 41 East 38.12 feet; South 69° 34' East 32.03 feet; South 75° 22' East 245.24 feet; thence leaving center of said road and running with a fence line of Justin Veazey South 7° 56' West passing an iron pin on the South road bank at 0+19 a total of 270.27 feet to a post; thence with another fence line of Veazey North 88° 00' West passing a fence post a 6+50.1 a total of 665.54 feet to a point in the center of an old gravel drive; thence crossing to the West side of said drive with an agreed line by Charles Branson North 14° 02' East 246.24 feet to an iron pin on the West road bank; thence with another agreed line of Branson and portions of a fence North 22° 22' East passing an iron pin on the South side of above mentioned County Road at 2+86.03, a total of 306.03 feet to the beginning containing 5.506 acres.

Being the same real estate conveyed by deed from Aubrey Clark, single, to Clinton D. Gipson, Sr., et ux., dated March 30, 2004, and of record in Deed Book 627, page 148, Hopkins County Court Clerk's Office.

CG

STATE OF KENTUCKY > SC
COUNTY OF HOPKINS

This instrument was filed for record on the
28 day of September, 20 04
at 12:10 m, and is duly recorded in
mtg book 795
page 161
DEVRA A. STECKLER, CLERK
Nicole Coffman D.C.

Form RD 3550-12
(Rev. 8-00)

Form Approved
OMB No. 0575-0172

United States Department of Agriculture
Rural Housing Service

Account # ▬▬▬▬▬

## SUBSIDY REPAYMENT AGREEMENT

1. As required under section 521 of the Housing Act of 1949 (42 U.S.C. 1490a), subsidy received in accordance with a loan under section 502 of the Housing Act of 1949 is repayable to the Government upon the disposition or nonoccupancy of the security property. Deferred mortgage payments are included as subsidy under this agreement.

2. When I fail to occupy or transfer title to my home, recapture is due. If I refinance or otherwise pay in full without transfer of title and continue to occupy the property, the amount of recapture will be calculated but, payment of recapture can be deferred, interest free, until the property is subsequently sold or vacated. If deferred, the Government mortgage can be subordinated but will not be released nor the promissory note satisfied until the Government is paid in full. In situations where deferment of recapture is an option, recapture will be discounted 25% if paid in full at time of settlement.

3. Market value at time of initial subsidy $ 120,425.00 _____ less amount of Rural Housing Service (RHS) loans $ 113,551.23 _____ less amount of any prior liens $ 0.00 _____ equals my/our original equity $ 6,873.77 _____. This amount equals _____ 5.7100 % of the market value as determined by dividing original equity by the market value.

4. If all loans are not subject to recapture, or if all loans subject to recapture are not being paid, the amount to be recaptured is computed according to the following formula. Divide the balance of loans subject to recapture that are being paid by the balance of all open loans. Multiply the result by 100 to determine the percent of the outstanding balance of open loans being paid.

5.

| months loan outstanding | Average interest rate paid | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | 1 % | 1.1 2% | 2.1 3% | 3.1 4% | 4.1 5% | 5.1 6% | 6.1 7% | >7% |
| 0 - 59 | .50 | .50 | .50 | .50 | .44 | .32 | .22 | .11 |
| 60 - 119 | .50 | .50 | .50 | .49 | .42 | .31 | .21 | .11 |
| 120 - 179 | .50 | .50 | .50 | .48 | .40 | .30 | .20 | .10 |
| 180 - 239 | .50 | .50 | .49 | .42 | .36 | .26 | .18 | .09 |
| 240 - 299 | .50 | .50 | .46 | .38 | .33 | .24 | .17 | .09 |
| 300 - 359 | .50 | .45 | .40 | .34 | .29 | .21 | .14 | .09 |
| 360 & up | .47 | .40 | .36 | .31 | .26 | .19 | .13 | .09 |

6. Calculating Recapture

Market value (at the time of transfer or abandonment)

LESS
Prior liens,
RHS balance,
Reasonable closing costs,
Principal reduction at note rate,
Original equity (see paragraph 3), and
Capital improvements (see 7 CFR part 3550).

EQUALS
Appreciation value. (If this is a positive value, continue.)

TIMES
Percentage in paragraph 4 (if applicable),
Percentage in paragraph 5, and
Return on borrower's original equity (100% - percentage in paragraph 3).

EQUALS
Value appreciation subject to recapture. Recapture due equals the lesser of this figure or the amount of subsidy received.

Borrower agrees to pay recapture in accordance with this agreement.

| Borrower Clinton D Gipson Sr   *Clinton D Gipson SR* | Date 09-27-2004 |
|---|---|
| Borrower Sharon C Gipson   *Sharon C Gipson* | Date 09-27-2004 |

*According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0575-0172. The time required to complete this information collection is estimated to average 5 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.*

Exhibit C

BOOK 81 PAGE 697

NO. 09CI-00188

HOPKINS CIRCUIT COURT
DIVISION

BENEFICIAL KENTUCKY, INC

PLAINTIFF

vs.

## NOTICE OF JUDGMENT LIEN

SHARON GIPSON

DEFENDANT

* * * * * * *

Take notice that the above referenced Plaintiff obtained a Judgment against the above referenced Defendant in the above Court, for the sum of $7,923.79 with interest accruing at the rate of 23.6774 per annum from May 5, 2009, plus all costs expended, and as security for said Judgment levies on all of the right, title and interest of the Defendant, SHARON GIPSON, in and to any real property located in Hopkins County, Kentucky.

### NOTICE

**NOTICE TO JUDGMENT DEBTOR** You may be entitled to an exemption under KRS 427.060, reprinted below. If you believe you are entitled to assert an exemption, seek legal advice.

KRS 427.060: "In addition to any exemption of personal property, an individual debtor's aggregate interest, not to exceed $5,000.00 in value, in real or personal property that such debtor or a dependent of such debtor uses as a permanent residence in this state, or in a burial plot for such debtor or a dependent of such debtor is exempt from sale under execution, attachment or judgment, except to foreclose a mortgage given by the owner of a homestead or for purchase money due thereon. This exemption shall not apply if the debt or liability existed prior to the purchase of the property or the erection of the improvements thereon."

### CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was mailed on 5-1-09 to SHARON GIPSON, at the last known address, in compliance with KRS 426.720(3).

ATTORNEY FOR THE PLAINTIFF:         PREPARED BY:

ERIC GRIMES                         ERIC GRIMES
LLOYD & McDANIEL, PLC               LLOYD & McDANIEL, PLC
P.O. Box 23200                      P.O. Box 23200
Louisville, KY 40223-0200           Louisville, KY 40223-0200
(502) 585-1880                      (502) 585-1880

THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. THIS COMMUNICATION IS FROM A DEBT COLLECTOR.

HB000247/9605X/0042

HOPKINS CO. KY FEE $13.00
RECORDED: 05-20-2009
ODESSA STRICKLER
CLERK

BK: EN 81
PG: 697-697

Book 81 Page 697

EXHIBIT D

BOOK 213 PAGE 383

Form-8-14- modLS                                                      Tract No.

## MEMORANDUM OF COAL LEASE AGREEMENT

This Memorandum of Coal Lease Agreement ("Agreement") is made and entered into effective as of the 19th day of July, 2017, by and between CLINTON D. GIPSON, a single person, 2119 Antioch Church Road, Hanson, Kentucky 42413, and SHARON K. GIPSON, a single person, P.O. Box 682, Manitou, Kentucky 42436, hereinafter (whether one or more) referred to as "Lessor," and ALLIANCE RESOURCE PROPERTIES, LLC, a Delaware limited liability company, with a mailing address of 1146 Monarch Street, Suite 350, Lexington, Kentucky 40513, hereinafter referred to as "Lessee."

## WITNESSETH:

WHEREAS, Lessor owns the coal in and underlying that certain property located in Hopkins County, Kentucky, and more particularly described on Exhibit A attached hereto and incorporated herein by reference (hereinafter referred to as the "Premises"); and

WHEREAS, Lessor has, by Coal Lease Agreement of even date herewith (the "Lease"), leased, let and demised unto Lessee all of the minable and merchantable coal and all other minerals lying within, embedded within or associated with the coal, including, but not limited to coalbed methane, coal mine methane and gob gas, within and underlying the Premises (hereinafter collectively referred to as the "Leased Coal").

NOW, THEREFORE, for and in consideration of the mutual agreements and covenants contained herein and in the Lease, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Lessor has and does hereby lease, let, grant and demise unto Lessee the Leased Coal, together with the exclusive right and privilege of mining, excavating and removing the Leased Coal by all underground methods of mining, excluding the longwall mining method, the exclusive right and privilege of processing, marketing, transporting and shipping the Leased Coal, and the right and privilege to use the Premises in the manner set forth in the Lease, all subject to and in accordance with the terms, conditions, provisions and limitations contained in the Lease.

EXCEPTING and RESERVING, however, unto Lessor all ownership interests in and to the other minerals in, on and underlying the Premises not granted, demised and leased hereunder, together with the right to utilize the same to the extent that such utilization does not interfere with Lessee's mining operations and other activities hereunder.

This Agreement is made upon the additional terms and provisions contained in the Lease, including but not limited to the following, to wit:

Lessor does hereby grant and demise unto Lessee the right to transport men, supplies, air, power, communications, materials and coal, including coal mined from other properties, under and through the Premises, to utilize the underground passageways and mine workings within and underlying the Premises for ventilation, transportation, storage/injection of mine slurry, coal

1

Exhibit E

384

combustion byproducts, rock dust, and similar products, and to impact or make use of the Premises for surveying, exploration, core hole development, de-watering and rescue operations, plugging of abandoned oil and gas wells and facilitating Lessee's compliance with federal, state and local laws, rules and regulations, all of said rights to be exercisable by Lessee without liability to Lessor for damages arising therefrom. Any use by Lessee of the surface of the Premises not specifically set forth in this Paragraph shall require Lessor's prior written approval.

Notwithstanding the foregoing, it is understood and agreed that the rights granted above are granted to Lessee only to the extent and insofar as Lessor has the right to grant same under the deeds pursuant to which it holds title to the Leased Coal and the Premises, and such rights are subject to all interests and rights of the owners of all estates in and to the Premises not owned by Lessor.

The parties agree that the Leased Coal and Premises may be mined and used in conjunction with any and all other coal and lands now or hereafter owned, leased or controlled by the Lessee. Lessee shall have the right to drive entries and air courses across the outside boundaries of the Premises where such boundaries are contiguous to other lands or coal seams now or hereafter owned or leased by Lessee, and Lessor hereby expressly waives all duty, statutory or otherwise, on the part of Lessee to maintain a barrier pillar in the coal on either or both sides of such outside boundaries.

The Lease shall be and extend for an initial term of ten (10) years from and after the date hereof, with the right of Lessee to extend the Lease thereafter for successive one (1) year periods, whether or not mining of the Leased Coal was commenced during the initial term, for as long as mining operations are being conducted by or for Lessee in the coal field of which the Premises is a part (said coal field (the "Coal Field") being described on Exhibit B attached hereto and incorporated herein by reference) or until exhaustion of the Leased Coal, whichever is later. Each extension of the Lease shall be subject to the terms and conditions set forth therein and shall take effect automatically unless Lessee has provided written notice of termination of the Lease prior to the beginning of any extended term.

Lessee shall have the right, after termination of the Lease for any reason, and without the obligation to make payment of Minimum Royalty, to enter within the Premises for the purpose of reclaiming areas disturbed by mining operations and otherwise complying with the requirements of any local, state or federal law, rule, regulation or ordinance, to utilize the underground passageways and mine workings within, and underlying the Premises for ventilation, transportation, storage/injection of mine slurry and similar products, and any other purpose deemed necessary or desirable in connection with its operations in the area, and to remove from the Premises all structures, mining equipment, supplies and all other property which the Lessee has placed or caused to be placed thereon. It is fully understood and agreed that the foregoing rights shall survive the expiration, cancellation, forfeiture or other termination of the Lease.

Lessor agrees to exercise, upon request by Lessee and at no cost to Lessor, any rights it may have under any oil and gas lease, rights-of-way agreement or easement agreement affecting the Premises to require the oil and gas lessee or rights-of-way/easement grantee to remove or relocate any pipelines which interfere with Lessee's mining operations hereunder. In addition,

2

385

Lessor agrees that any future grant(s) of oil and gas leases or pipeline easements/rights-of way shall require the lessee or grantee thereof, at its own expense, to remove and/or relocate pipelines at the request of the Lessee.

Lessor Warrants Generally its title to the Leased Coal, and the Lease covers and/or binds all interest in and to the Leased Coal and the Premises which Lessor now owns or may hereafter acquire.  In addition, if, at any time during the initial ten-year term of this Agreement, Lessee identifies any coal (or undivided interest therein) owned by Lessor in the Coal Field that is not described on Exhibit A hereto, then such coal shall, at Lessee's option, same to be exercised by written notice to Lessor, be deemed Leased Coal hereunder from and after the date of such notice. Lessee shall be authorized to pay all royalties of whatever nature as set forth in the Lease, and no change or division in ownership of the Leased Coal shall be binding upon Lessee for any purpose until the person acquiring such interest has furnished to Lessee a copy or copies of the properly recorded instrument or instruments pursuant to which such interest was acquired.  All other terms and provisions of the Lease are incorporated herein by reference.

*IN WITNESS WHEREOF*, the parties have executed this Memorandum of Coal Lease Agreement, same to be effective as of the day and year first above written.

LESSOR

CLINTON D. GIPSON

SHARON GIPSON

LESSEE

ALLIANCE RESOURCE PROPERTIES, LLC,
a Delaware limited liability company,

By: _____
Kendall S. Barret,
Vice President - Land Management,
An Authorized Officer

3

386

STATE OF _Kentucky_

COUNTY OF _Hopkins_

   The foregoing instrument was acknowledged before me by Clinton D. Gipson on this the
_13th_ day of _July_, 2017.

_____
NOTARY PUBLIC (Signature)

My Commission Expires: _5/14/2018_
#531161

STATE OF _Kentucky_

COUNTY OF _Hopkins_

   The foregoing instrument was acknowledged before me by Sharon Gipson on this the _11th_
day of _July_, 2017.

_____
NOTARY PUBLIC (Signature)

My Commission Expires: _5/14/2018_
#531161

STATE OF _KENTUCKY_

COUNTY OF _FAYETTE_

   The foregoing instrument was acknowledged before me by Kendall S. Barret, Vice
President - Land Management of Alliance Resource Properties, LLC, a Delaware limited liability
company, on behalf of the company, on this the _31st_ day of _July_, 2017.

_____
NOTARY PUBLIC (Signature) #538123

My Commission Expires: _June 31, 2020_

THIS INSTRUMENT PREPARED BY:

_____
Kendall S. Barret, Vice President – Land
   Management and Corporate Counsel
Alliance Resource Properties, LLC
1146 Monarch Street, Suite 350
Lexington, Kentucky 40513
(859) 224-7200

4

387

**EXHIBIT A**

The following described property located in Hopkins County, Kentucky (together with any property owned by Lessor that adjoins same or is contiguous thereto):

Description of Property:

A certain tract of land situated on the South side of a County road and the East side of a gravel drive and located approximately 4 miles West of Hanson, Hopkins County, Kentucky, and more particularly described as follows:

Beginning at a point in the center of a County Road; thence with the center of said road as follows: South 39° 41' East 65.93 feet; South 51° 59' East 70.29 feet; South 47° 04' East 156.79 feet; South 56° 41 East 38.12 feet; South 69° 34' East 32.03 feet; South 75° 22' East 245.24 feet; thence leaving center of said road and running with a fence line of Justin Veazey South 7° 56' West passing an iron pin on the South road bank at 0 + 19 a total of 270.27 feet to a post; thence with another fence line of Veazey North 85° 00' West passing a fence post a 6 + 50.1 a total of 665.54 feet to a point in the center of an old gravel drive; thence crossing to the West side of said drive with an agreed line by Charles Branson North 14° 02' East 246.24 feet to an iron pin on the West road bank; thence with another agreed line of Branson and portions of a fence North 22° 22' East passing an iron pin on the South side of above mentioned County Road at 2 + 86.03, a total of 306.03 feet to the beginning containing 5.506 acres.

Source of Title:

Being the same property conveyed to Clinton D. Gipson and Sharon Gipson, his wife, with right of survivorship, from Aubrey Clark by deed dated March 30, 2004, and of record in Deed Book 627, at Page 148, in the office of the Hopkins County Clerk.



**EXHIBIT B**

Description of Coal Field

The coal field encompasses properties located in Hopkins County, Kentucky and Webster County, Kentucky and is more particularly bounded and described as follows:

Bounded on the North by major geological fault lines known as the Rough Creek Fault System, which are located just South of Sebree, Kentucky, beginning at the Green River to Highway 873, then with Highway 873 to Highway 41A.

Bounded on the West by Highway 41A beginning at Highway 873 to Highway 132 in Dixon, then with Highway 132 to Highway 109 in Clay, then with Highway 109 to Highway 70 in South.

Bounded on the South by Highway 70 beginning at Highway 109, then with Highway 70 to Highway 41 in Madisonville, then with Highway 41 to the Paducah & Louisville Railroad, then with the Paducah & Louisville Railroad to the Pond River.

Bounded on the East by the Pond River beginning at the intersection of Highway 70, then with the Pond River to the Green River, then with the Green River to the Rough Creek Fault System.